Morris, Appellant, vs. Kallas, Respondent.

*April 15—May 11, 1948.*

For the appellant there was a brief by *Frank E. Hebert* and *Robert G. Hebert,* both of Tomahawk, and oral argument by *Robert G. Hebert.*

*Walter A. Graunke* of Wausau, for the respondent.

FRITZ, J. The ultimate and controlling issue under the pleadings and evidence is as to whether or not defendant agreed to pay to plaintiff for the assets sold by him to the defendant the sum of $3,000 in addition to his paying all indebtedness owing by plaintiff on the restaurant and fixtures which he had purchased on a conditional-sales contract, and also discharging plaintiff's obligations under the lease of the premises. There was no written contract as to any terms of their agreement other than plaintiff's assignment of that lease.

It appears without dispute that in 1942 the plaintiff, Morris, lived in Tomahawk, Wisconsin, and there owned and operated the Alamo Club. The restaurant in question was at Ironwood, and he had a five-year lease on the premises under which he operated the restaurant from April to October. He paid $1,700 originally for the business, and after a fire remodeled the place at an expense which he testified was $2,196. In 1942, defendant lived in Merrill, Wisconsin, and was employed as a cook at various places. He did not know Morris.

Briefly stated, the oral evidence, so far as here material, is to the following effect. A witness, Charles Chenes, who had

a pool hall at Merrill, testified that at his place of business Morris said he wanted to get rid of his place in Ironwood, and wanted someone to take it over for the amount of the bills.    Chenes told Kallas about the restaurant and to go and take the place.    After that Kallas and his wife, Belle Kallas, went with Morris in his car from the Alamo Club to Ironwood, and there looked the restaurant over.    Mrs. Kallas testified that while in the car Morris said he wanted to get rid of the place and would do so for the amount of the debts, and that he was having trouble and did not want any debts on him. George Kahara, a public accountant, testified that Kallas had engaged him to keep his file and records, and that the purchase price of the restaurant was the total of the bills, $2,851.86, and he used this figure to compute depreciation in Kallas' income tax for the period from October 12, 1942, to July 31, 1946; and the total bills were paid in partial payments by May 1, 1944.

On the other hand, Morris testified he talked with Kallas in a booth in the Ironwood cafe; that Ann Montonati was working there for him, and as a housekeeper at his place in Tomahawk; and that on October 12, 1942, she came to Ironwood, but he did not know how she got there.    Ann Montonati testified she saw Kallas and Morris together in the Ironwood cafe on October 12, 1942; that she was sitting and having coffee, and Morris called her over to the booth and introduced her to Kallas, and wanted her as a witness; that he was selling the Ironwood cafe and wanted her to sit there and listen; that Morris said Kallas was paying all outstanding bills, plus giving Morris $3,000, after the bills were paid up; that Kallas said "Yes;" and that she sat there a little while and then got up and finished her coffee.    Kallas testified he does not know Ann Montonati; that there was no conversation in the restaurant at Ironwood, Michigan, on October 12, 1942; and that no demand was ever made on him to pay $3,000

additional to Morris, and he did not know Morris was making any claim for that amount until the lawsuit was started (June 25, 1947).

Thus, there were decided conflicts in the evidence. But the trial court evidently considered more credible and worthy of belief the testimony given by Chenes, Belle Kallas, Kahara, and the defendant, and their testimony fairly admitted of the court's findings and conclusions. That they were probably well warranted is evident from Judge VAN HECKE's analysis of the evidence, to wit:

"The plaintiff and defendant were, of course, vitally interested in the outcome of this trial, and so was Mrs. Kallas to some extent, but she impressed the court as earnestly endeavoring to tell the facts and when she testifies she and her husband were in the Morris car together with Mr. Morris, on one trip to Ironwood, the court is inclined to credit her testimony, and especially in view of Charles Chenes' testimony. . . .

"Ann Montonati . . . worked for the plaintiff and his then wife, as a housekeeper. . . . She testifies she had gone to Ironwood a day or two before this deal was closed . . . and while there she was called by the plaintiff over to a booth in which he and the defendant were sitting and told her he wanted her to hear the terms of the bargain of sale he was making with the defendant. She testifies she heard plaintiff say that the bargain was that Kallas was to pay the outstanding indebtedness against the restaurant business and when all paid, he was to pay the plaintiff $3,000 as balance of consideration. She remembers practically nothing else of what was talked of, or said, or done, while she was with the two men for a period of from fifteen minutes to one-half hour. . . . However, on the stand, she continually referred to plaintiff as 'Jimmie' and the court, from observing her on the stand and after listening to her testimony does not feel that too much weight should be given such testimony. More weight would be given to it if there were nothing to refute it but the court must hold that, aside from any other consideration, the testimony of Charles Chenes is of more weight and successfully refutes any favorable aspect to this witness' testimony.

"The one person who testified who has no interest whatsoever in the result of this trial is Charles Chenes. He was one of the men sought out by plaintiff when plaintiff was trying to find a buyer for his property. And this is Chenes' testimony: that plaintiff came to him in his place of business and told him he wanted to get rid of the Ironwood restaurant business and would sell it for the debts against it. It was this proposition that Chenes submitted to defendant; and in fact urged him to accept it as he thought it a good deal. There was no talk between Chenes and plaintiff about any additional $3,000 payment. The court is satisfied that it was as a result of this talk between plaintiff and Chenes and between Chenes and the defendant that defendant made the trip to Ironwood and eventually closed the deal. It is rather an absurdity to think that after such a proposition was made to the defendant that he would agree to pay an additional $3,000 to the plaintiff. It is from this testimony, which so fully substantiates defendant's testimony and from the court's observation of the witnesses and parties, that judgment was pronounced for defendants. . . . Another fact which should be given consideration is that plaintiff did not bring an action for the amount he claimed due him for five years after the deal was made and it was not until after defendant had sold the restaurant business for a substantial amount over the purchase price, although there is testimony that with the original investment and improvements made by him, his profit was not as great as it might seem to be."

*By the Court.*—Judgment affirmed.